IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ANTHONY ALLEN, #B-43715 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL NO. 11-cv-248-MJR |
| | ) | |
| JAMES KREIG, ADRIAN FEINERMAN, | ) | |
| and GARY CONDER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

In an order entered March 29, 2011 (Doc. 1), the Court found that three of the seven claims presented in Plaintiff's amended complaint were unrelated to the other four claims. The Court advised Plaintiff of the Court's intention to sever those three claims into a new lawsuit. The Court also gave Plaintiff 45 days to voluntarily dismiss those claims, so as to avoid the imposition of an additional filing fee. The Court received no communication from Plaintiff, and the 45 day period to voluntarily dismiss his claims has now expired. The Court therefore severs the three claims into this new action. Because the Court was awaiting Plaintiff's decision on whether to dismiss these three claims, preliminary review of their merits was deferred. Now that the claims have been severed into the current case, the Court shall conduct review pursuant to 28 U.S.C. § 1915A.

Plaintiff has alleged that he was deprived of his constitutional rights, and this action has been raised pursuant to 42 U.S.C. § 1983. 28 U.S.C. § 1915A provides, in pertinent part:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Upon careful review of the complaint the Court finds that some of the claims in the complaint may be dismissed at this point in the litigation.

**Facts:**

The following version of the facts of this case is gleaned from the relevant portions of Plaintiff's amended complaint (Doc. 10). On June 17, 2008, Plaintiff further irritated a pre-existing injury to his Achilles' tendon, and asked to be seen by medical personnel. Plaintiff was not immediately seen, so on June 24, 2008, he had another inmate contact his mother, who then called the prison and requested treatment for Plaintiff. Two days later, on June 26, 2008, Plaintiff was sent to the medical ward at Menard Correctional Center for treatment. Defendant Feinerman watched as Defendant Kreig placed Plaintiff's foot in a cast without first ordering an x-ray or MRI test. This treatment caused a limitation in Plaintiff's mobility.

After Plaintiff's foot was placed in the cast, he was transferred to a different cell in the medical ward which had no toilet nor running water, and Plaintiff was denied his personal property and delivery of his mail. On July 8, 2008, Plaintiff was moved to a new medical cell, but he complained to Defendant Conder about the conditions of his previous cell, as well as the denial of his property and mail. That same day, Plaintiff was transferred back to the previous cell about which he had complained. On August 27, 2009, more than a year following the original injury and the

placement of the cast on Plaintiff's foot, Plaintiff complained to Defendant Kreig that he was still having pain. Defendant Kreig informed Plaintiff that there was nothing that he or an outside hospital could do concerning his foot.

**Discussion:**

Upon review of the merits of Plaintiff's claims that were severed from the original case, the Court finds that the claims can be expanded into six counts, instead of the original three counts the Court had envisioned. To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of FED. R. CIV. P. 8(e) and 10(b), the Court finds it appropriate to break the claims in Plaintiff's *pro se* complaint and other pleadings into numbered counts, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**COUNT 1:** **Deliberate Indifference**

Plaintiff claims that Defendant Kreig was deliberately indifferent to his medical needs when he denied Plaintiff's request for immediate treatment on June 17, 2008. Instead, Plaintiff was seen on June 26, nine days later. Defendant Kreig did not order x-rays or MRI tests to determine the best course of treatment.[1] Instead, Defendant Kreig proceeded to put Plaintiff's foot in a cast. Plaintiff was then rendered semi-immobile, and had to use crutches to walk. More than a year later, Defendant Kreig told Plaintiff that there was nothing further he or an outside hospital could do to further treat the injury.

The Supreme Court has recognized that "deliberate indifference to serious medical needs of

---

[1] Though Plaintiff states in his complaint that no tests were conducted on his injured foot, Plaintiff also states in his complaint that "on June 17, 2008 my x-rays was negative." (Doc. 10, p. 8). This indicates that an x-ray had, in fact, been taken at some point, though Plaintiff does not explain what the x-ray was for and who ordered that it be taken.

prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106; *see also Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001).

> To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999). Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000). However, the Supreme Court stressed that this test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm . . . . Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer,* 511 U.S. at 842.

The Seventh Circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. *See Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000) (officers were on notice of the seriousness of the condition of a prisoner with a ruptured appendix because he "did his part to let the officers know he was suffering"). The Circuit also recognizes that a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the

level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008); *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (courts will not take sides in disagreements with medical personnel's judgments or techniques). However, a plaintiff inmate need not prove that a defendant intended the harm that ultimately transpired or believed the harm would occur. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) (discussing *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996)).

### a. Disagreement with Treatment

Plaintiff alleges that Defendant Kreig was deliberately indifferent to his medical needs when Krieg placed Plaintiff's foot in a cast. Plaintiff alleges that this occurred without the use of x-rays or MRI tests. While placement of his foot in a cast for an achilles tendon injury may not have been the treatment Plaintiff desired, mere disagreement with a physician's chosen course of medical treatment does not amount to deliberate indifference under the Eighth Amendment. *See Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996); *Ciarpaglini*, 352 F.3d at 331; *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (courts will not takes sides in disagreements about medical personnel's judgments or techniques). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

Plaintiff received care from Defendant Kreig when his foot was placed in a cast. Although x-rays or an MRI test may have been requested by Plaintiff, even if those tests may have been the medical norm, Defendant Kreig's failure to provide them does not amount to a constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008) (malpractice or negligence claims are not constitutional violations). Although the treatment given to Plaintiff by Kreig may not have been the treatment Plaintiff desired, or even the best treatment available, Plaintiff's condition

was treated. Accordingly, this portion of Plaintiff's claim for deliberate indifference against Defendant Kreig will be dismissed with prejudice.

### b. Delay in Treatment

Plaintiff further argues that he was forced to wait nine days between the time he filed his request for medical attention, and the time he was actually treated. An unnecessary dely in medical care either by correctional officers or medical professionals constitutes a violation of the Eighth Amendment where it creates an unnecessary infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain."); *see also Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996).

Though a delay of nine days may seem short, it is indeed a long time for an individual to suffer through severe pain. Plaintiff does not indicate how much pain he was in, and what further suffering he was subjected to because of this delay. Considering the claim in the light most favorable to Plaintiff, a ruptured Achilles' tendon is sufficiently serious to warrant prompt attention, as it would be obvious to a layperson that an individual in Plaintiff's condition would need to see a doctor without delay. *See Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008). Where an inmate has a serious medical need, he must then allege that the individual responsible for the delay in treatment was aware of the need, and yet disregarded the risk that the serious injury may have posed to the inmate's health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Lee* 533 F.3d at 509-10; *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Plaintiff alleges that Defendant Kreig was aware of his injury, because Plaintiff had filed numerous grievances and sick-call requests. It is not entirely clear at this point whether the nine day delay caused further injury. However, it is clear that Plaintiff was suffering from a serious condition that warranted prompt attention, so that Defendant Kreig would

have been deliberately indifferent to a risk of harm if he unnecessarily caused a delay in treatment. For this reason, this portion of Plaintiff's claim for deliberate indifference survives review, and will proceed.

### c.     Refusal to Treat

Plaintiff next claims that Defendant Kreig denied him medical treatment when Plaintiff requested further treatment for his ongoing injury on August 27, 2009, and Kreig replied that there was nothing more that could be done. As stated above, Plaintiff must show that this alleged denial of treatment was a deliberate failure to treat a serious medical condition. *See Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).

Because a ruptured Achilles' tendon is the sort of injury that a layperson would recognize as needing medical attention, it is deemed a serious medical condition. *Lee* 533 F.3d at 509-510. However, this alone does not end the matter. Plaintiff must also allege that, either with direct or imputed knowledge of the injury, Kreig refused to treat Plaintiff. This creates and issue of fact, as Plaintiff does not say in his complaint whether his treatment from Defendant Kreig stopped after he placed the cast on Plaintiff's foot in June 2008. Plaintiff further fails to state whether Defendant Kreig was in any way treating Plaintiff for his pain. At this point, it is unclear to the Court whether Defendant Kreig refused to provided any further treatment after placing the cast on Plaintiff's foot in June 2008, despite knowing about an ongoing injury. It is also plausible that Defendant Kreig did provide further treatment, but by August 2009 the treatment options had been exhausted. Because of theses questions of fact, this portion of Plaintiff's claim for deliberate indifference against Defendant Kreig also survives review.

**COUNT 2:     Failure to Protect**

Plaintiff alleges that Defendant Feinerman failed to protect him when Feinerman failed to

object to Defendant Kreig placing Plaintiff's foot in a cast, even though Feinerman was present when this treatment took place. Plaintiff claims that Feinerman, who is a doctor, had a duty to protect Plaintiff from Defendant Kreig's inadequate treatment.

As discussed above, Defendant Kreig did not commit a constitutional violation when he treated Plaintiff by providing him with a cast. However, even if the Court had found a violation, because Defendant Feinerman was not the individual who committed the action, he has no duty to address the issue. *See Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009) ("public employees are responsible for their own misdeeds but not for anyone else's."). *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (doctrine of respondeat superior does not apply to § 1983 actions).

The court in *Burks* stated that "no prisoner is entitled to insist that one employee do another's job." *Burks*, 555 F.3d at 595. This statement applies in this case to mean that Defendant Feinerman did not have a duty to ensure that Defendant Kreig was doing his job correctly by providing Plaintiff with one form of treatment over another. Plaintiff has merely attempted to recast his claim claim regarding his disagreement with how Defendant Kreig treated his injury. For these reasons, this claim against Defendant Feinerman will be dismissed with prejudice.

**COUNT 3:    Conditions of Confinement**

After having his foot put in a cast, Plaintiff was transferred to a new cell in the medical ward. This cell was dirty, had no running water, and no toilet. Plaintiff was provided with what he refers to as a funnel to urinate in.

The Eighth Amendment prohibits cruel and unusual punishment and is applicable to the states through the Fourteenth Amendment. It has been a means of improving prison conditions that were constitutionally unacceptable. *See, e.g., Robinson v. California*, 370 U.S. 660, 666 (1962);

*Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994). As the Supreme Court noted in *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981), the amendment reaches beyond barbarous physical punishment to prohibit the unnecessary and wanton infliction of pain and punishment grossly disproportionate to the severity of the crime. *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). The Constitution also prohibits punishment that is totally without penological justification. *Gregg*, 428 U.S. at 183.

Not all prison conditions trigger Eighth Amendment scrutiny – only deprivations of basic human needs like food, medical care, sanitation and physical safety. *Rhodes,* 452 U.S. at 346; *see also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). In order to prevail on a conditions of confinement claim, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims. *McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter,* 501 U.S. 294, 302 (1991). The objective component focuses on the nature of the acts or practices alleged to constitute cruel and unusual punishment. *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992). The objective analysis examines whether the conditions of confinement exceed contemporary bounds of decency of a mature civilized society. *Id*. The condition must result in unquestioned and serious deprivations of basic human needs, or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes*, 452 U.S. at 347; *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir 1987). The claims alleged must be considered in light of the fact that "mere discomfort and inconvenience do not implicate the constitution." *Caldwell v. Miller*, 790 F.2d 589, 600-601 (7th Cir. 1986).

Plaintiff alleges that, after his foot was placed in a cast, he was transferred to a cell in the medical ward of the prison, which did not contain a toilet or a sink. Therefore, Plaintiff did not have

access to running water, and was provided a funnel in which to urinate. Although prison conditions are meant to be harsh and restrictive to serve a penological purpose, the conditions to which Plaintiff was subjected do not seem to serve this purpose. It has been held that an inmate may state a claim where he is denied use of a working toilet and sink, *see Vinning-El v. Long*, 482 F.3d 923, 923-25 (7th Cir. 2007), which is what Plaintiff is alleging. Although Plaintiff was provided a funnel in which to urinate, this, without proper justification, seems beyond the normal restrictive environment provided in prison. Further, Plaintiff does not state whether he was provided any accommodation for the lack of a sink in his cell, such as being able to access running water in another part of the prison. Again, this edges into the Eighth Amendment arena, as it may be the denial of a basic human need. At this stage in the proceedings, Plaintiff has satisfied the objective portion of the Eighth Amendment claim criteria.

This is not the end of the inquiry, however. In addition to showing objectively serious conditions, a plaintiff must also demonstrate the subjective component to an Eighth Amendment claim. The subjective component of unconstitutional punishment is the intent with which the acts or practices constituting the alleged punishment are inflicted. *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992); s*ee also Wilson v. Seiter,* 501 U.S. 294, 298 (1991); *McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994). In conditions of confinement cases, the relevant state of mind is deliberate indifference to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837; *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994). The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm. *Farmer,* 511 U.S. at 842. A

failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer the harm. *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992). It is well-settled that mere negligence is not enough. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-348 (1986).

Plaintiff claims that he made Defendant Conder aware that the cell in which he was first housed while in the medical ward was insufficient to meet basic human needs. Although Plaintiff alerted Defendant Conder to the conditions only after Plaintiff was moved to a different cell, Conder then moved Plaintiff back to the original cell with knowledge of its insufficiencies. This suggests a desire on Defendant Conder's part to cause Plaintiff to suffer, as discussed in *Jackson,* 955 F.2d at 22, which satisfies the subjective element of an Eighth Amendment claim. Plaintiff has thus satisfied both the objective and subjective components of his claim, so this count against Defendant Conder survives review and will proceed.

**COUNT 4:    Property**

While he was housed in the medical ward, Plaintiff was not provided with his personal property, including legal materials, pens, paper, cosmetics, clothing and his television. The only constitutional right that might be implicated by these facts is Plaintiff's right, under the Fourteenth Amendment, to be free from deprivations of his property by state actors without due process of law. To state a claim under the due process clause of the Fourteenth Amendment, Plaintiff must establish a deprivation of liberty or property *without due process of law*; if the state provides an adequate remedy, Plaintiff has no civil rights claim. *Hudson v. Palmer*, 468 U.S. 517, 530-536 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy).

The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILL. COMP. STAT. 505/8

(1995). Because Plaintiff has an adequate remedy in State Court for his depravation of property claim, this claim will be dismissed from this action without prejudice.

Of further note, included among the materials that Plaintiff claims were taken from him, he lists legal materials. He does not explain whether these were personal legal documents or research materials, and he also does not allege that the taking of this material prejudiced him, caused detriment to an ongoing legal proceeding, or prevented him from being able to file a legal claim. An allegation of actual or threatened detriment of this nature is an essential element of a § 1983 action for denial of access to the courts. *Shango v. Jurich*, 965 F.2d 289, 292 (7th Cir. 1992); *Martin v. Davies,* 917 F.2d 336, 338 (7th Cir. 1990). Therefore, Plaintiff's failure to allege that he was prejudiced in any way from the taking of his legal materials defeats whatever First Amendment access to the courts claim he may have had.

**COUNT 5:** **Mail Service**

While he was housed in the medical ward, Plaintiff did not receive his personal mail, and he was also unable to send any mail, effectively denying him use of the prison's mail system. Plaintiff did not allege that this included a denial of his right to send and receive legal mail.

Inmates have a First Amendment right to send and receive mail. *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Kaufman v. McCaughtry*, 419 F.3d 678, 685-686 (7th Cir. 2005); *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). Legal mail is of particular concern because it further implicates the inmate's right to access the courts. *Lewis v. Casey*, 518 U.S. 343 (1996);*Antonelli v. Sheahan*, 81 F.3d 1422, 1431-1432 (7th Cir. 1996). However, interference with even non-legal mail is of constitutional concern; regulations and practices affecting non-legal mail must be "reasonably related to legitimate penological interests." *Thornburgh*, 490 U.S. at 409; *Kaufman*, 419 F.3d at 685-686; *Rowe*, 196 F.3d at 782. The Supreme Court has stated that an inmate's mail can be censored (and

potentially denied) where that inmate has been provided procedural safeguards, including notice and an opportunity to be heard on the issue. *Procunier v. Martinez*, 416 U.S. 396, 418-419 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989). However, the Court has also stated that "the legitimate governmental interest in the order and security of penal institutions justifies the imposition of certain restraints on inmate correspondence." *Id.* at 412-413. The Seventh Circuit has specifically upheld the denial of access to mail in certain circumstances. *See Wells v. Franzen*, 777 F.2d 1258, 1265 (7th Cir. 1985) (prisoner on suicide watch was denied access to mail).

Plaintiff does not allege that he was prevented from mailing or receiving legal mail; instead he states that he was denied the use of the mail system in general. Thus, under the liberal notice pleading standard, he has adequately stated a constitutional claim. Therefore, this claim will proceed.

**COUNT 6:    Retaliation**

Plaintiff filed various grievances and civil cases against prison officials at Menard over a period of time. Plaintiff alleges that, based on this protected activity, he was subjected to retaliation in the form of inadequate medical care and poor cell conditions. Specifically, he had to wait nine days to be seen for an injury, Defendant Kreig put Plaintiff in a cast which limited his mobility, Defendant Feinerman allowed this to happen without interfering, and Defendant Conder caused Plaintiff to be placed in a dirty cell in the medical ward where he was denied running water, a toilet, his personal property, and use of the mail system.

Even though some of these allegations are not actionable in and of themselves, if the acts were taken in retaliation for the exercise of a constitutionally protected right, then they become actionable under §1983. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) (discussing

*Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper.")); *see also Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (per curiam) (retaliatory transfer of a prisoner); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996) (retaliatory delay in transferring prisoner); *Cornell v. Woods*, 69 F.3d 1383, 1389 (8th Cir. 1995) (retaliatory discipline).

At issue here is whether Plaintiff experienced an adverse action or actions that would likely deter First Amendment activity in the future, and whether the First Amendment activity was "at least a motivating factor" in the Defendants' decision to take the retaliatory action. *Bridges*, 557 F.3d at 551. Plaintiff alleges that he was subjected to inadequate medical treatment after he filed a civil rights case and filed grievances regarding his prison conditions. Plaintiff then was placed in a cell where he was denied water and a toilet, and was returned to that cell when he began complaining again about the conditions of his confinement. This presents a series of events from which retaliation can be inferred. As stated above, even though the actions taken against him might not themselves be actionable, they become so if they were taken in an effort to silence Plaintiff's complaints and grievances. It is unclear at this point whether the actions taken by the Defendants were motivated by Plaintiff's First Amendment activity, and for this reason this claim survives review and will proceed.

**Disposition:**

   **IT IS HEREBY ORDERED** that **Counts 1a and 2** are **DISMISSED with prejudice**. **Count 4** is **DISMISSED without prejudice**.

   **IT IS ORDERED** that the Clerk of Court shall prepare for Defendants **KREIG, CONDER,** and **FEINERMAN** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons),

and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Williams for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Williams for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 9/14/2011**

/s/ MICHAEL J. REAGAN
U.S. District Judge